UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

**CIVIL ACTION NO. 2010-183 (WOB-JGW)**

WILLIAM J. BRAMBLE, JR.,
ET AL.                                                    PLAINTIFFS

VS.            <u>**MEMORANDUM OPINION AND ORDER**</u>

CAMPBELL COUNTY, KENTUCKY,
ET AL.                                                    DEFENDANTS
_____

This is an action by former detainees at the Campbell County Detention Center (CCDC) against the jail, and against Southern Health Partners (SHP), alleging cruel and unusual punishment in violation of the 5th, 8th, and 14th Amendment and plaintiffs' civil rights under 42 U.S.C. § 1983. Plaintiffs also allege various state law claims.

This matter is before the court on the motion of the Campbell County defendants for summary judgment as to plaintiff, John Chambers (Doc. 71), and the motion for partial summary judgment of Southern Health Partners, as to plaintiff, John Chambers (Doc. 72).

Having reviewed the parties' briefs, the Court concludes that oral argument is unnecessary to the resolution of these motions. The Court therefore issues the following Memorandum Opinion and Order.

## IV. FACTS

### A. Facts Common to All Claims

Since February 1, 2007, the CCDC has had a contract with SHP pursuant to which SHP provides "all professional medical, mental health, dental and related health care and administrative services" for CCDC inmates, including sick call, nursing care, regular and emergency physician care. (Holt, Doc. 132 Ex. 1).[1]  SHP, in turn, contracts with a physician and employs nurses to staff the CCDC.  These arrangements were in place at all times relevant to this action.

Plaintiffs filed this case on August 27, 2010, as a proposed class action.  (Doc. 1).  On September 24, 2010, plaintiffs filed a Second Amended Class Action Complaint, which is the operative complaint herein.  (Doc. 5).  Plaintiffs allege that they were denied medical attention for their serious medical needs in violation of their 5th, 8th and 14th Amendment rights.  (Doc. 5 ¶ 16, ¶¶ 366-69).  Plaintiffs also allege Kentucky statutory claims (Id. at ¶¶ 370-71), negligent or intentional infliction of emotional distress (Id. at ¶¶ 372-73), negligence (Id. at ¶¶ 374-75), loss of consortium (Id. at ¶¶ 376-77), and wrongful death

---

[1] This case has been consolidated with *Holt v. Campbell County*, Covington Civil Action No. 09-82 and references to the Holt record are cited as "Holt,____."

2

(Id. at ¶¶ 378-79).

On March 25, 2011, the parties stipulated to dismissal of plaintiffs' class action allegations. (Doc. 28). Discovery ensued and, after numerous extensions, the pending motions for summary judgment were filed and briefed.

**B.  Plaintiff John Chambers**

John Chambers ("Chambers") was incarcerated at the CCDC from June 28, 2010 at approximately 11:22 a.m. to July 08, 2010 at approximately 3:19 p.m. (Doc. 71 Ex. 2, 10).

When Chambers was admitted to the CCDC he told the booking officer he had a history of stress-induced seizures and a torn ligament in his left knee. (Doc. 71 Ex. 5). During booking, Chambers also notified the CCDC staff that he required Dilantin and Lamictal to treat his seizures. (Doc. 71 Ex. 4, 6).

On June 28, 2010, Chambers saw a SHP nurse and received doses of Dilantin and Lamictal. (Doc. 71 Ex. 6). Chambers alleges that he only received a partial dose of his medication at this time and when he notified the nurse, she stated it was all she had at the moment. (Doc. 72 Ex. 2 p. 73, 74). Chambers also states he did not notify anyone else of the discrepancy. (Doc. 72 Ex. 2 p. 74). Chambers also states he only received his doses "off and

on" after this point. (Id. at 75). Chambers's medical records show he received his medication from June 28-30, 2010. (Doc. 71 Ex. 7). Further, Chambers admits he never notified any officers about the issue with his medicine. (Doc. 123 Ex. 1 p. 78). Chambers also admits he never filed a written grievance while at the CCDC. (Id. at p. 38-39).

Chambers told an unknown deputy he required a bottom bunk because of his seizures, but was placed in a top bunk. (Doc. 72 Ex. 2 p. 88-89). Chambers also told a nurse about his need for a bottom bunk, but no one else was told. (Id. at 89).

On July 1, 2010, Chambers had his first seizure around 3:10 p.m. (Doc. 71 Ex. 6). Chambers alleges he fell off the top bunk, hit his head and knee, causing physical injury to both. (Doc. 87 p. 3; Doc. 123 Ex. 1 p. 54-58). Chambers was then taken by wheelchair to medical where he was kept under observation. (Doc. 72 Ex. 3). A nurse was speaking to Chambers when he began to have his second seizure at approximately 4:50 p.m. (Id.) Afterwards, Chambers was responsive and monitoring continued. (Id.) Chambers had a third seizure at approximately 5:20 p.m. (Id.) At this point, the nurse contacted Dr. Schroer and Chambers was sent to the Emergency Room at St. Elizabeth at

approximately 5:59 p.m. and he arrived at approximately 6:09 p.m. (Doc. 71 Ex. 6, 8, 9). Chambers was discharged the same day from the ER and returned to CCDC where monitoring continued. (Doc 72 Ex. 3, 8).

After Chambers returned from the hospital, he alleges a continuing failure to provide him with the proper medication and dosages. (Doc. 87 p. 3). Chambers also had no further seizures after returning from the hospital until his release on July 8, 2010. (Doc. 123 Ex. 1 p. 89-90, Doc. 72 Ex. 10).

*Analysis*

A. **Legal Standards**

Section 1983 prohibits any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State" from depriving any U.S. citizen "of any rights, privileges, or immunities secured by the constitution and laws." Plaintiff argues that his Fourteenth Amendment right to adequate medical care was violated, which is analogous to prisoners' Eighth Amendment rights to be free from cruel and unusual punishment. "The Eighth Amendment does not apply to pretrial detainees. Under the Fourteenth Amendment Due Process Clause, however, pretrial detainees have a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners."

5

*Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001).

"As applied to prisoners, this constitutional guarantee encompasses a right to medical care for serious medical needs." *Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)). However, because the Eighth Amendment prohibits mistreatment only if it is tantamount to "punishment," courts have imposed liability upon prison officials only where they are "so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain." *Perez*, 466 F.3d at 423 (internal quotations and citation omitted).

"Negligence or medical malpractice alone cannot sustain an Eighth Amendment claim, absent a showing of deliberate indifference." *Id.* (citing *Estelle*, 429 U.S. at 105-06).

"Deliberate indifference" has both an objective and a subjective component. *Id.* (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). With respect to medical needs, the need "must be objectively, 'sufficiently serious.'" *Id.* at 423-24 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

"In considering the subjective component, this circuit

has emphasized that a plaintiff must produce evidence showing that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* at 424 (internal quotations and citation omitted). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer v. Brennan*, 511 U.S. 825, 838 (1994). *See also id*. at 842 (official must act or fail to act "despite his knowledge of a substantial risk of serious harm").

The subjective component "prevents medical-malpractice claims from being transformed into constitutional claims." *Quigley v. Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (citation omitted).

### B. <u>Qualified Immunity</u>

Assuming a plaintiff raises a triable issue as to whether a constitutional violation occurred, a public official sued in his or her individual capacity may still be shielded from suit under the doctrine of qualified immunity. All defendants here assert this defense.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages

insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).

### C. Application to Chambers's Claims

#### 1. Objectively Serious Medical Need

The parties concede that epilepsy with attached seizures is a serious medical need, thus this prong is met.

#### 2. Deliberate Indifference: Subjective Component

Even though Chambers's medical condition was a serious medical need, there is no evidence from which a reasonable jury could conclude that any of the defendants were deliberately indifferent to his medical needs. None of the named defendants were shown to have any contact with Chambers.

### a. CCDC Defendants

Chambers argues that defendants Buckler and Fickenscher were aware of facts from which they could, and did, draw an inference that a substantial risk of serious harm existed as to Chambers's health. This argument fails as a matter of law because there is no such evidence in the record.

There is no evidence that Buckler or Fickenscher had any contact with Chambers during his incarceration, were aware of his medical condition, or were aware of any of his symptoms. There is also no evidence that they were involved in any of the medical decisions involving Chambers. ("Defendant Buckler had almost no contact with the general population, much less with Mr. Chambers specifically." Doc. 87 p. 6, Plaintiff's Response in Opposition to CCDC's Motion for Summary Judgment). Chambers never filed a grievance and there is no other evidence showing that either official knew of Chambers's medical need. Further, Chambers never identifies any point when either Buckler or Fickenscher had knowledge of specific facts of Chambers's medical situation.

Because there is no evidence that Buckler or Fickenscher knew anything about Chambers's health, they could not have been deliberately indifferent and the

subjective element fails as a matter of law.  Because *respondeat superior* is not available as a basis for liability under § 1983, Buckler and Fickenscher are entitled to summary judgment.[2]

With no underlying constitutional violation, Chambers can state no "municipal liability" claim as to Campbell County.  *See Blackmore v. Kalamazoo County*, 390 F.3d 890, 900 (6th Cir. 2004) ("A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers.") (citation omitted).

Chambers has also adduced no admissible evidence of a clear and persistent pattern of deliberate indifference to inmate medical needs.  This Court already held in another case that the same affidavits submitted by the plaintiff here, regarding allegedly poor care at the CCDC are: (1) inadmissible for a variety of reasons, and (2) even if admissible, inadequate as a matter of law to support a municipal liability claim against Campbell County or SHP. *Fryman v. Campbell County*, Covington Civil Action No. 09-114-WOB-JGW, Docs. 25, 30.

---

[2] Chambers argues that Buckler and Fickenscher were aware of general problems with the medical contractor at the CCDC. That, however, provides no basis for the claim against them in their individual capacities where it is undisputed that they played no role in Chambers's care.

For these reasons, all the CCDC defendants are entitled to summary judgment.[3]

### b. SHP Defendants

With respect to the SHP defendants, Chambers has abandoned all causes of action against Dr. Waldridge. (Doc. 88 p. 1). Thus, only the claims against Nurse Dawes and SHP are addressed here. (Id.)

Plaintiff's argument as to the deliberate indifference of Nurse Dawes cites to no record evidence from which a reasonable jury could make such a finding. Instead, the Plaintiff simply asserts Nurse Dawes meets the subjective standard, then lays out the subjective legal standard, with no supporting facts. (Doc. 88 p. 6). The only fact provided is that Nurse Dawes began overseeing the CCDC facility in August 2009. (Id.) This is patently insufficient to meet the subjective element of deliberate indifference.

To overcome summary judgment, the opposing party must present some affirmative evidence showing there is a genuine issue of material fact and cannot simply rest on its allegations. *Hunley v. DuPont Auto.*, 341 F.3d 491, 496

---

[3] The Court thus does not reach the issue of qualified immunity, although the individual defendants would obviously be entitled to that defense given the absence of any constitutional violation.

(6th Cir. 2003). Further, the trial court has no obligation to "wade through" the record in search of specific facts to support the party's claim, nor is it required to speculate as to which portion of the record the party relies. *United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993). Because Plaintiff offers no evidence on which he relies for its conclusory statement that Nurse Dawes was deliberately indifferent, his argument fails as a matter of law, and Nurse Dawes is entitled to summary judgment.

With no underlying constitutional violation, Chambers can state no "municipal liability" claim as to SHP. *See Blackmore v. Kalamazoo* County, 390 F.3d 890, 900 (6th Cir. 2004) ("A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers.") (citation omitted).

Finally, the report of Chambers's expert witness, Dr. Joseph Paris, raises no triable issue. (Doc. 72 Ex. 9). According to Dr. Paris, CCDC's failure to assign Chambers, an inmate with a known seizure disorder, a bottom bunk and SHP's delay in administration of anticonvulsant therapy constitute deliberate indifference. (Id.) These, however, are improper conclusions of law that go to the ultimate issue and are not admissible at trial. *Cutlip v. City of*

*Toledo*, 488 F. App'x 107, 119-21 (6th Cir. 2012). As such, they raise no genuine issue of material fact.

Finally, Dr. Paris's report is silent as to the subjective perception of these defendants, and the record thus remains devoid of evidence that would satisfy this element.

All defendants are thus entitled to summary judgment on Chambers's § 1983 claim. Given this disposition, the Court will decline to exercise its supplemental jurisdiction over Chambers's state law claims. *See* 28 U.S.C. § 1367(c).[4]

Therefore, having reviewed this matter, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** (1) that the motion of the Campbell County defendants for summary judgment as to plaintiff, John Chambers (Doc. #71) be, and is hereby, **GRANTED AS TO PLAINTIFF'S FEDERAL CLAIM;** (2) the motion of Southern Health Partners for partial summary judgment as to

---

[4] The Court notes that Chambers concedes the state law claims against Campbell County should be dismissed, as well as the outrage claim against Buckler and Fickenscher. (Doc. 87 p. 1). Chambers also concedes all claims against Dr. Waldridge should be dismissed, and the state regulatory and outrage claims against all the SHP defendants should be dismissed. (Doc. 88 p. 1).

13

plaintiff, John Chambers (Doc. #72) be, and is hereby, **GRANTED AS TO PLAINTIFF'S FEDERAL CLAIM**; and (3) Plaintiff John Chambers's state law claims be, and are hereby, **DISMISSED WITHOUT PREJUDICE**.

This 23rd day of September, 2013.



Signed By:
William O. Bertelsman  WOB
United States District Judge