UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

CIVIL ACTION NO. 2010-183 (WOB-JGW)

WILLIAM J. BRAMBLE, JR.,
ET AL.                                          PLAINTIFFS

VS.                    <u>MEMORANDUM OPINION AND ORDER</u>

CAMPBELL COUNTY, KENTUCKY,
ET AL.                                          DEFENDANTS
_____

        This is an action by former detainees at the Campbell
County Detention Center (CCDC) against the jail, and
against Southern Health Partners (SHP), alleging cruel and
unusual punishment in violation of the 5th, 8th, and 14th
Amendment and plaintiffs' civil rights under 42 U.S.C. §
1983.  Plaintiffs also allege various state law claims.

        This matter is before the Court on the motion of the
Campbell County defendants for summary judgment as to
plaintiff, Martha Camacho (Doc. 69), and the motion for
partial summary judgment of Southern Health Partners, as to
plaintiff, Martha Camacho (Doc. 70).

        Having reviewed the parties' briefs, the Court
concludes that oral argument is unnecessary to the
resolution of these motions.  The Court therefore issues
the following Memorandum Opinion and Order.

IV.       **FACTS**

   A.  **Facts Common to All Claims**

   Since February 1, 2007, the CCDC has had a contract with SHP pursuant to which SHP provides "all professional medical, mental health, dental and related health care and administrative services" for CCDC inmates, including sick call, nursing care, regular and emergency physician care. (Holt, Doc. 132 Ex. 1).[1]  SHP, in turn, contracts with a physician and employs nurses to staff the CCDC.  These arrangements were in place at all times relevant to this action.

   Plaintiffs filed this case on August 27, 2010, as a proposed class action.  (Doc. 1).  On September 24, 2010, plaintiffs filed a Second Amended Class Action Complaint, which is the operative complaint herein.  (Doc. 5). Plaintiffs allege that they were denied medical attention for their serious medical needs in violation of their 5th, 8th and 14th Amendment rights.  (Doc. 5 ¶ 16, ¶¶ 366-69). Plaintiffs also allege Kentucky statutory claims (Id. at ¶¶ 370-71), negligent or intentional infliction of emotional distress (Id. at ¶¶ 372-73), negligence (Id. at ¶¶ 374-75), loss of consortium (Id. at ¶¶ 376-77), and wrongful death

---

[1] This case has been consolidated with *Holt v. Campbell County*, Covington Civil Action No. 09-82 and references to the Holt record are cited as "Holt,_____."

2

(Id. at ¶¶ 378-79).

On March 25, 2011, the parties stipulated to dismissal of plaintiffs' class action allegations.  (Doc. 28). Discovery ensued and, after numerous extensions, the pending motions for summary judgment were filed and briefed.

### B.   **Plaintiff Martha Camacho**

Martha Camacho ("Camacho") was incarcerated at the CCDC from June 21, 2010 at approximately 10:59 a.m. to June 25, 2010 at approximately 12:34 a.m.  (Doc. 69 Ex. 3, 8).

Camacho told the booking officer when admitted to the CCDC that she had no medical conditions for which she required treatment or medication.  (Doc. 69 Ex. 4).

On June 22, 2010, Camacho said she had pain near her left breast and when she inspected the area, she found a red mark.  (Doc. 70 Ex. 2 p. 64, 65).  Camacho says she showed a deputy, who said she looked fine and that it would take a week to see a nurse if she put in a request.  (Id. at 64.)

On June 23, 2010, the injury grew "double the size" and caused Camacho more pain.  (Id.)  She then requested to see a nurse from an unnamed officer, who replied it would take a week to see a nurse.  (Id.)

On June 24, 2010 at around 7:00 a.m. Camacho showed

3

Officer Slaughter the affected area.  (Id. at 65).  Officer
Slaughter helped Camacho fill out a sick-call slip and
Camacho was seen by a nurse around 4:00 p.m.  (Id.)  The
nurse gave Camacho ibuprofen for her pain and also notified
Camacho that if she was still in jail the next morning, she
would be started on antibiotics.  (Id. at 109).  Camacho
was released later that night at 12:34 a.m. on June 25,
2010.  (Doc. 69 Ex. 8).

On June 25, 2010, at approximately 1:23 p.m. Camacho
was admitted to the Emergency Room at St. Elizabeth
Hospital in Covington, KY.  (Doc. 69 Ex. 9).  While there,
Camacho was diagnosed as having an abscess and cellulitis.
(Id.)  Camacho left the hospital at approximately 4:39 p.m.
with no pain and was advised to return for follow up
treatment.  (Id.)  Camacho then went to St. Elizabeth
Hospital in Edgewood, KY at 11:30 p.m. on June 25, 2010 and
was admitted until June 28, 2010.  During the three days,
Camacho received antibiotics and when released she was told
to follow-up with her primary care physician, which she
never did.  (Id.; Doc. 70 Ex. 2 p. 61-62).

### *Analysis*

#### A.   <u>Legal Standards</u>

Section 1983 prohibits any "person who, under color of
any statute, ordinance, regulation, custom, or usage, of

4

any State" from depriving any U.S. citizen "of any rights, privileges, or immunities secured by the constitution and laws."  Plaintiff argues that her Fourteenth Amendment right to adequate medical care was violated, which is analogous to prisoners' Eighth Amendment rights to be free from cruel and unusual punishment.  "The Eighth Amendment does not apply to pretrial detainees. Under the Fourteenth Amendment Due Process Clause, however, pretrial detainees have a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners." *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001).

"As applied to prisoners, this constitutional guarantee encompasses a right to medical care for serious medical needs."  *Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)).  However, because the Eighth Amendment prohibits mistreatment only if it is tantamount to "punishment," courts have imposed liability upon prison officials only where they are "so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain."  *Perez*, 466 F.3d at 423 (internal quotations and citation omitted).

"Negligence or medical malpractice alone cannot

5

sustain an Eighth Amendment claim, absent a showing of deliberate indifference." *Id.* (citing *Estelle*, 429 U.S. at 105-06).

"Deliberate indifference" has both an objective and a subjective component. *Id.* (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). With respect to medical needs, the need "must be objectively, 'sufficiently serious.'" *Id.* at 423-24 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

"In considering the subjective component, this circuit has emphasized that a plaintiff must produce evidence showing that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* at 424 (internal quotations and citation omitted). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer v. Brennan*, 511 U.S. 825, 838 (1994). *See also id.* at 842 (official must act or fail to act "despite his knowledge of a substantial risk of serious harm").

The subjective component "prevents medical-malpractice claims from being transformed into constitutional claims."

6

*Quigley v. Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (citation omitted).

### B.   Qualified Immunity

Assuming a plaintiff raises a triable issue as to whether a constitutional violation occurred, a public official sued in his or her individual capacity may still be shielded from suit under the doctrine of qualified immunity.   All defendants here assert this defense.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).   "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).

### C.   Application to Camacho's Claims

#### 1.   Objectively Serious Medical Need

Camacho argues the abscess was a serious medical condition that was so obvious even a lay person would

7

easily recognize the necessity for medical care.  The
Defendants argue that it is not a serious medical
condition.  However, assuming arguendo that it was a
serious medical condition, Camacho's claim fails on the
subjective element of deliberate indifference.  Thus, this
Court assumes it is a serious medical condition.

### 2.   Deliberate Indifference: Subjective Component

Even if Camacho's medical condition was a serious
medical need, there is no evidence from which a reasonable
jury could conclude that any of the defendants were
deliberately indifferent to her medical needs.  None of the
named defendants were shown to have any contact with
Camacho.

### a.   CCDC Defendants

Camacho argues that defendants Buckler and Fickenscher
were aware of facts from which they could, and did, draw an
inference that a substantial risk of serious harm existed
as to Camacho's health.  This argument fails as a matter of
law because there is no such evidence in the record.

There is no evidence that Buckler or Fickenscher had
any contact with Camacho during her incarceration, were
aware of her medical condition, or were aware of any of her
symptoms.  There is also no evidence that they were

8

involved in any of the medical decisions involving Camacho. ("Defendant Buckler had almost no contact with the general population, much less with Ms. Camacho specifically." Doc. 85 p. 6, Plaintiff's Response in Opposition to CCDC's Motion for Summary Judgment).  Camacho never filed a grievance and there is no other evidence showing that either official knew of Camacho's medical need.[2]

Because there is no evidence that Buckler or Fickenscher knew anything about Camacho's health they could not have been deliberately indifferent and the subjective element fails as a matter of law.  Because *respondeat superior* is not available as a basis for liability under § 1983, Buckler and Fickenscher are entitled to summary judgment.[3]

With no underlying constitutional violation, Camacho can state no "municipal liability" claim as to Campbell County.  *See Blackmore v. Kalamazoo County*, 390 F.3d 890,

---

[2] Although Camacho testified that she told two CCDC deputies during the first two days of her incarceration that she needed to see medical staff, these individuals are not identified or named in this lawsuit.  Moreover, a two day delay in assisting an inmate in obtaining medical attention for a non-emergency need would not constitute deliberate indifference.

[3] Camacho argues that Buckler was aware of general problems with the medical contractor at the CCDC.  That, however, provides no basis for the claim against him in his individual capacity where it is undisputed that Buckler played no role in Camacho's care.

900 (6th Cir. 2004) ("A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers.") (citation omitted).

Camacho has also adduced no admissible evidence of a clear and persistent pattern of deliberate indifference to inmate medical needs.  This Court already held in another case that the same affidavits submitted by the plaintiff here, regarding allegedly poor care at the CCDC are: (1) inadmissible for a variety of reasons, and (2) even if admissible, inadequate as a matter of law to support a municipal liability claim against Campbell County or SHP. *Fryman v. Campbell County*, Covington Civil Action No. 09-114-WOB-JGW, Docs. 25, 30.

For these reasons, all the CCDC defendants are entitled to summary judgment.[4]

**b.   SHP Defendants**

With respect to the SHP defendants, the Court first notes that Camacho abandoned her individual § 1983 claim against Dr. Waldridge.  (Doc. 86 p. 1).  Thus, only the claims against Nurse Dawes and SHP are addressed here. (Id.)

---

[4] The Court thus does not reach the issue of qualified immunity, although the individual defendants would obviously be entitled to that defense given the absence of any constitutional violation.

10

Camacho's argument as to the deliberate indifference of Nurse Dawes cites to no record evidence from which a reasonable jury could make such a finding.  Instead, Camacho simply asserts Nurse Dawes meets the subjective standard, then lays out the subjective legal standard, with no supporting facts.  (Doc. 86 p. 5, 6).  This is patently insufficient to meet the subjective element of deliberate indifference.

To overcome summary judgment, the opposing party must present some affirmative evidence showing there is a genuine issue of material fact and cannot simply rest on its allegations.  *Hunley v. DuPont Auto.*, 341 F.3d 491, 496 (6th Cir. 2003).  Further, the trial court has no obligation to "wade through" the record in search of specific facts to support the party's claim, nor is it required to speculate as to which portion of the record the party relies.  *United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993).  Because Camacho offers no evidence on which she relies for her conclusory statement that Nurse Dawes was deliberately indifferent, her argument fails as a matter of law, and Nurse Dawes is entitled to summary judgment.

With no underlying constitutional violation, Camacho can state no "municipal liability" claim as to SHP.  *See*

11

*Blackmore v. Kalamazoo* County, 390 F.3d 890, 900 (6th Cir. 2004) ("A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers.") (citation omitted).

Finally, the report of Camacho's expert witness, Dr. Joseph Paris, raises no triable issue. (Doc. 70 Ex. 7) According to Dr. Paris, "Camacho's request took 4 days for a response . . . describing a life threatening disease" and the guards failure to direct Camacho to fill out a sick call slip constitute deliberate indifference. (Id.)  But this is not supported by the record.  Camacho's inmate sick call slip is dated August 24, 2010, she was seen by the nurse on August 24, 2010, and a deputy helped Camacho fill out the sick call slip.  (Doc. 70 Ex. 2 p. 64-65, Doc. 70 Ex. 4).  Thus, the basis for the expert's opinion is contradicted by the facts in the record.  Even so, Dr. Paris's conclusion of deliberate indifference is an improper conclusion of law that goes to the ultimate issue and is not admissible at trial.  *Cutlip v. City of Toledo*, 488 F. App'x 107, 119-21 (6th Cir. 2012).  As such, it raises no genuine issue of material fact.

Finally, Dr. Paris's report is silent as to the subjective perception of these defendants, and the record thus remains devoid of evidence that would satisfy this

12

element.

All defendants are thus entitled to summary judgment on Camacho's § 1983 claim.  Given this disposition, the Court will decline to exercise its supplemental jurisdiction over Camacho's state law claims.  *See* 28 U.S.C. § 1367(c).[5]


Therefore, having reviewed this matter, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** (1) that the motion of the Campbell County defendants for summary judgment as to plaintiff, Martha Camacho (Doc. #69) be, and is hereby, **GRANTED AS TO PLAINTIFF'S FEDERAL CLAIM;** (2) the motion of Southern Health Partners for partial summary judgment as to plaintiff, Martha Camacho (Doc. #70) be, and is hereby, **GRANTED AS TO PLAINTIFF'S FEDERAL CLAIM;** and (3) Plaintiff Martha Camacho's state law claims be, and are hereby, **DISMISSED WITHOUT PREJUDICE.**

---

[5] Further, Camacho failed to oppose the motion for summary judgment on her state law claims against CCDC, Buckler and Fickenscher, thus conceding they fail as a matter of law. (Doc. 85).  Camacho also concedes that the state regulatory claims and the outrage claims against the SHP defendants should be dismissed. (Doc. 86 p. 1).

13

This 23rd day of September, 2013.



Signed By:

*William O. Bertelsman*   WOB

United States District Judge