UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON

**CIVIL ACTION NO. 2010-183 (WOB-JGW)**

WILLIAM J. BRAMBLE, JR.,
ET AL.                                                   PLAINTIFFS

VS.             <u>**MEMORANDUM OPINION AND ORDER**</u>

CAMPBELL COUNTY, KENTUCKY,
ET AL.                                                   DEFENDANTS
_____

This is an action by former detainees at the Campbell County Detention Center (CCDC) against the jail, and against Southern Health Partners (SHP), alleging cruel and unusual punishment in violation of their 5th, 8th, and 14th Amendment rights and plaintiffs' civil rights under 42 U.S.C. § 1983. Plaintiffs also allege state law claims.

This matter is before the Court on the motion of the Campbell County defendants for summary judgment as to plaintiff, Steven Halpin (Doc. 77), and the motion for partial summary judgment of Southern Health Partners, as to plaintiff, Steven Halpin (Doc. 78).

Having reviewed the parties' briefs, the Court concludes that oral argument is unnecessary to the resolution of these motions. The Court therefore issues the following Memorandum Opinion and Order.

*FACTS*

**A.   Facts Common to All Claims**

Since February 1, 2007, the CCDC has had a contract with SHP pursuant to which SHP provides "all professional medical, mental health, dental and related health care and administrative services" for CCDC inmates, including sick call, nursing care, regular and emergency physician care. (Holt, Doc. 132 Ex. 1).[1]  SHP, in turn, contracts with a physician and employs nurses to staff the CCDC.  These arrangements were in place at all times relevant to this action.

Plaintiffs filed this case on August 27, 2010, as a proposed class action.  (Doc. 1).  On September 24, 2010, plaintiffs filed a Second Amended Class Action Complaint, which is the operative complaint herein.  (Doc. 5). Plaintiffs allege that they were denied medical attention for their serious medical needs in violation of their 5th, 8th and 14th Amendment rights.  (Doc. 5 ¶ 16, ¶¶ 366-69). Plaintiffs also allege Kentucky statutory claims (Id. at ¶¶ 370-71), negligent or intentional infliction of emotional distress (Id. at ¶¶ 372-73), negligence (Id. at ¶¶ 374-75), loss of consortium (Id. at ¶¶ 376-77), and wrongful death

---

[1] This case is related to *Holt v. Campbell County*, Covington Civil Action No. 09-82 and references to the Holt record are cited as "Holt,_____."

2

(Id. at ¶¶ 378-79).

On March 25, 2011, the parties stipulated to dismissal of plaintiffs' class action allegations. (Doc. 28). Discovery ensued and, after numerous extensions, the pending motions for summary judgment were filed and briefed.

**B.  Plaintiff Steven Halpin**

Steven Halpin ("Halpin") was incarcerated at the CCDC from July 30, 2009 to November 1, 2010. (Doc. 77 Ex. 2). This lawsuit was filed August 27, 2010 and the amended complaint was filed September 24, 2010. (Doc. 1, 5).

When Halpin was admitted to the CCDC he told the booking officer he had no medical conditions and required no medications. (Doc. 77 Ex. 5). In addition, Halpin was advised that the Rules and Regulations of the CCDC were displayed on channels 1 and 6 of CCDC's Television Broadcast System. (Doc. 77 Ex. 4).

On August 11, 2009, the SHP staff conducted Halpin's medical screening. (Doc. 77 Ex. 6). The Medical Screening Form indicates Halpin suffers from nerve damage, acid reflux and depression, and he takes medications Cymbalta, Prilosec, and Claritin. (Doc. 77 Ex. 6). The next day, on August 12, 2009, SHP performed a medical history evaluation and physical exam. (Doc. 77 Ex. 7). Here, Halpin

indicated he had two prior back surgeries, had seasonal allergies, and acid reflux, and that he took Naproxen, Cymbalta, Benadryl, Prilosec, and a multi-vitamin. (Doc. 77 Ex. 7).

Halpin claims to have hurt his right wrist and hand at a work camp. (Doc. 130-2 p. 30). The Medical Sick Call slips show Halpin made his first complaint about wrist pain on May 29, 2010 with subsequent sick call slips following. (Doc. 78 Ex. 12). Halpin was seen by a nurse on May 31, 2010 regarding his wrist pain and referred to a doctor. (Doc. 78 Ex. 13). Halpin was seen by Dr. Schroer and Bichlemeir on June 9 and June 23. (Doc. 78 Ex. 9). Halpin never sought treatment for this injury after being released and the nature of the injury is still unknown, although Halpin testified that the jail doctor and Dr. Suetholtz, his primary care physician outside of jail, told him it was a "ganglion." (Doc. 130-2 p. 39-40, 107-10).

Halpin also claims to have had little access to a doctor to discuss his various medication requirements and changes. (Doc. 130-1 p. 93-94). Halpin requested changes to his medications at least twice and both requests were granted. (Doc. 77 Ex. 11, 13). On December 1, 2009, he submitted a sick call slip and the medication change occurred on December 4, 2009, and again on February 19,

2010 he submitted a sick call slip requesting a change, which went into effect the next day. (Doc. 77 Ex. 10, 11, 12, 13). However, Halpin contends the failure to see a doctor caused him to vomit stomach bile until he was provided Prilosec. (Doc. 130-2 p. 153).

Halpin only submitted one grievance pertaining to his medical care during his incarceration at CCDC. (Doc. 77 Ex. 14). Halpin claims he submitted another grievance to Defendant Buckler but there is no record of it and Halpin cannot recall its contents. (Doc 130-2 p. 52-54). Buckler stated he received no grievances or appeals from Halpin. (Doc. 77 Ex. 17). Halpin's recorded grievance was to Defendant Fickenscher and he responded to it the next day, stating that medical changed Halpin's medications to those requested and that Halpin's chart indicated he had received his medication. (Doc. 77 Ex. 16).

Halpin also claims that he often received the wrong medication and when he complained to Defendant Fickenscher and Nurse Kim about it, he was placed on medical observation. (Doc. 130-2 p. 132-33). Halpin wrote two letters to Nurse Kim, the medical team administrator for SHP, in March 2010 to address his issues with his medications. (Doc. 78 Ex. 7). Halpin alleges that being placed on medical observation was punishment for

complaining about receiving the wrong medication, and he was released from medical observation only when he told Nurse Kim that he would stop complaining about his medication. (Doc. 130-2 p. 134-36; Doc. 78 Ex. 7).

But even after this, Halpin never appealed his first grievance's denial. (Doc. 130-2 p. 50; Doc. 77 Ex. 17, 18). Halpin claims he did not appeal the denial of his grievance because the deputies began threatening him. (Doc. 130-2 p. 51). Further, Halpin alleges that he was threatened that if he did not stop complaining he would be shipped to Folsom or Fulton County so he could no longer see his daughter. (Doc. 130-1 p. 99; Doc. 130-2 p. 141).

Halpin also alleges that unknown deputies and "med pass" nurses told him SHP had a policy where the medical department was awarded bonuses for providing less treatment. (Doc. 130-2 p. 101-02).

Halpin also offers Dr. Joseph Paris as an expert witness. Dr. Paris recounts each sick call slip submitted by Halpin over his entire incarceration. (106 Ex. 1). Dr. Paris finds that Halpin's care was "spotty" and that there were extended periods where he did not get relief for "acid reflux, chronic pain and other conditions," and that the lapses in care conform to a pattern of deliberate indifference. (Doc. 106 Ex. 1 p. 8).

SHP's expert witness Dr. Grady Bazzel, states that an inmate like Halpin is very difficult to manage because of the amount of non-serious sick-call slips he submitted, while interspersing various important sick-call slips relating to depression and chronic pain. (Doc. 58 Ex. A p. 8). Dr. Bazzel states he saw "no indication of significant delays or discontinuation of medications used to treat serious medical conditions." (Doc. 58 Ex. A p. 8).

## *Analysis*

### A. <u>Legal Standard</u>

Section 1983 prohibits any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State" from depriving any U.S. citizen "of any rights, privileges, or immunities secured by the constitution and laws." Plaintiff argues that his Eighth Amendment right to be free from cruel and unusual punishment by being denied adequate medical care was violated.

"As applied to prisoners, this constitutional guarantee encompasses a right to medical care for serious medical needs." *Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)). However, because the Eighth Amendment prohibits mistreatment only if it is tantamount to "punishment," courts have imposed liability upon prison

7

officials only where they are "so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain." *Perez*, 466 F.3d at 423 (internal quotations and citation omitted).

"Negligence or medical malpractice alone cannot sustain an Eighth Amendment claim, absent a showing of deliberate indifference." *Id.* (citing *Estelle*, 429 U.S. at 105-06).

"Deliberate indifference" has both an objective and a subjective component. *Id.* (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). With respect to medical needs, the need "must be objectively, 'sufficiently serious.'" *Id.* at 423-24 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

"In considering the subjective component, this circuit has emphasized that a plaintiff must produce evidence showing that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* at 424 (internal quotations and citation omitted). "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."

*Farmer v. Brennan*, 511 U.S. 825, 838 (1994). *See also id.* at 842 (official must act or fail to act "despite his knowledge of a substantial risk of serious harm").

The subjective component "prevents medical-malpractice claims from being transformed into constitutional claims." *Quigley v. Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (citation omitted).

**B.  Qualified Immunity**

Assuming a plaintiff raises a triable issue as to whether a constitutional violation occurred, a public official sued in his or her individual capacity may still be shielded from suit under the doctrine of qualified immunity.  All defendants here assert this defense.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004)

(Kennedy, J., dissenting)).

C. **Prison Litigation Reform Act**

The PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Under this provision, "a prisoner must exhaust all of his available remedies before filing a § 1983 action in federal court." *Brock v. Kenton County, Ky.*, 93 Fed. App'x 793, 796 (6th Cir. 2004) (citation omitted). "That is, under the PLRA, exhaustion of available administrative remedies is a mandatory pre-condition to filing suit in federal court." *Id.* at 798 (citation omitted).

"The Sixth Circuit requires some affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." *Napier v. Laurel Jackson, Ky.*, 636 F.3d 218, 224 (6th Cir. 2011) (citation omitted). *See also Brock*, 93 F. App'x at 798 (noting that the prisoner "must make some affirmative efforts to comply with the administrative procedure" and that the procedures are "unavailable" only where, despite the prisoner's efforts, the facility thwarts

10

the inmate's attempts at exhaustion).

### C. Application to Halpin's Claims

#### 1. Prison Litigation Reform Act Exhaustion

The Prison Litigation Reform Act ("PLRA") bars Halpin's claim because he failed to exhaust his administrative remedies and was still a prisoner when the lawsuit was filed.

Halpin was incarcerated when he filed this lawsuit and thus is a prisoner for PLRA exhaustion purposes. *Cox v. Mayer*, 332 F.3d 422, 424-25 (6th Cir. 2003). Further, his claims allege he received inadequate medical care while incarcerated at the CCDC, which clearly pertain to "conditions of confinement."

Thus, the PLRA exhaustion requirement applies to Halpin, and all the defendants have pled this affirmative defense. (Doc. 17 at p. 33; Doc. 18 at p. 2). Further, CCDC defendants have attached to their motion for summary judgment evidence of the CCDC's grievance process, the means through which inmates are informed of it, and that Halpin was in fact informed of it. (Doc. 77 Ex. 4, 17). Once defendants put forward this evidence, plaintiffs are "required to present 'significant probative evidence' to defeat the motion for summary judgment on this ground." *Napier*, 636 F.3d at 225 (citation omitted).

Halpin argues that the PLRA exhaustion requirement is not applicable to him.  That is, administrative remedies were not available to him because he alleges the jail administrators' began threatening him.  (Doc. 105 p. 4, Plaintiff's Reply in Opposition to Defendant CCDC's Motion for Summary Judgment).  Halpin argues that a grievance procedure is not available if the inmate is threatened with retaliation for using the procedure.  (Doc. 105 p. 4).

"[I]t is well-established that the exhaustion required by the PLRA is mandatory, and is not excused by the prisoner-plaintiff's general allegation that he feared retaliation at the hands of prison staff about whose conduct he complains."  *Wheeler v. Boyd Cnty.*, CIV.A. 13-36-HRW, 2013 WL 1293758, at *2 (E.D. Ky. Mar. 25, 2013) (citing *Boyd v. Corrections Corp. of America,* 380 F.3d 989, 997–98 (6th Cir.2004)).[2]  Thus, Halpin's argument that the administrative remedies were not available to him fails.

Further, because Halpin's § 1983 claim would be barred by the applicable one-year statute of limitation even if

---

[2] "Indeed, it is difficult to imagine circumstances where the prisoner's fear of retaliation for filing grievances would render such administrative remedies "unavailable" for purposes of the PLRA, where that fear was not sufficient to deter the prisoner from later filing a lawsuit regarding the same events, an act one would assume to be far more likely to precipitate retaliation."  *Wheeler*, CIV.A. 13-36-HRW, 2013 WL 1293758, at *2 n.1 .

refiled after exhaustion, this claim will be dismissed with prejudice. *Holt v. Campbell Cnty., Ky.*, CIV.A. 2009-082 WOB, 2012 WL 2069653, at *2 (E.D. Ky. June 8, 2012); *Burke v. Campbell Cnty. Fiscal Court*, No. Civ.A. 06-CV-191-DLB, 2006 WL 3627711, at *3 (E.D. Ky. Dec. 11, 2006).[3]

### 2. Objectively Serious Medical Need

The parties dispute whether Halpin's acid reflux, wrist injury, depression and nerve damage were serious medical needs. The Court will assume, however, that his conditions constituted serious medical needs.

### 3. Deliberate Indifference: Subjective Component

There is no evidence from which a reasonable jury could conclude that any of the defendants were deliberately indifferent to Halpin's medical needs.

#### a. CCDC Defendants

Halpin argues that defendants Buckler and Fickenscher were aware of facts from which they could, and did, draw an inference that a substantial risk of serious harm existed as to his health. This argument fails as a matter of law because there is no such evidence in the record.

---

[3] SHP fails to make the PLRA argument in its Partial Motion for Summary Judgment, but it would apply with equal force to them. SHP does raise the PLRA as an affirmative defense in its answer.

There is no evidence that Buckler had any contact with Halpin during his incarceration, was aware of his medical condition, or was aware of any of his symptoms. There is also no evidence that he was involved in any of the medical decisions involving Halpin. Halpin alleges he wrote Buckler a grievance, but he could not remember when or what it stated. This is not enough to show Buckler's deliberate indifference because it fails to show Buckler knew of and disregarded an excessive risk to Halpin's health.

Fickenscher responded to Halpin's grievance, effectively denying it. (Doc. 77 Ex. 15). Fickenscher, in response to Halpin's grievance, contacted medical about Halpin's complaints. (Doc. 77 Ex. 14, 15). He notes Halpin placed a sick call slip on Feburary 19, 2010 requesting a change of medication, the doctor accommodated Halpin's requested changes on Feburary 20, 2010, and that Halpin's chart shows no lapse in the receipt of his medications. (Doc. 77 Ex. 15). If an official reasonably responds to the substantial risk, they are not deliberately indifferent. *Farmer*, 511 U.S. at 837.

"Non-medical administrators are entitled to defer to the judgment of health professionals as long as they do not ignore the prisoner." *Poindexter v. Boyd*, 5:10-CV-32, 2011 WL 5008351, at *8 (W.D. Ky. Oct. 20, 2011) (citing *Berry v.*

*Peterman*, 604 F.3d 435, 440 (7th Cir. 2010)). Fickenscher thus was not deliberately indifferent when he relied on medical's response to Halpin's grievance.

Thus, Halpin's § 1983 claim fails as a matter of law because Buckler had no knowledge of facts that could cause him to disregard an excessive risk to Halpin's health, and Fickenscher reasonably responded to Halpin's grievance by contacting the medical department. Because *respondeat superior* is not available as a basis for liability under § 1983, Buckler and Fickenscher are entitled to summary judgment.[4]

With no underlying constitutional violation, Halpin can state no "municipal liability" claim as to Campbell County. *See Blackmore v. Kalamazoo* County, 390 F.3d 890, 900 (6th Cir. 2004) ("A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers.") (citation omitted).

For these reasons, all the CCDC defendants are entitled to summary judgment.[5]

---

[4] Halpin argues that Buckler and Fickenscher were aware of general problems with the medical contractor at the CCDC. That, however, provides no basis for the claim against them in their individual capacities where it is undisputed that they played no role in Halpin's care.

[5] The Court thus need not reach the issue of qualified immunity, although the individual defendants would

15

### b. SHP Defendants

Halpin's argument showing deliberate indifference of Dr. Waldridge and Nurse Dawes states no facts from which to find either was deliberately indifferent. Instead, Halpin simply asserts they meet the subjective standard, then lays out the subjective legal standard, with no supporting facts. (Doc. 106 p. 6-7).

However, to overcome summary judgment, the opposing party must present some affirmative evidence showing there is a genuine issue of material fact and cannot simply rest on its allegations. *Hunley v. DuPont Auto.*, 341 F.3d 491, 496 (6th Cir. 2003). Further, the trial court has no obligation to "wade through" the record in search of specific facts to support the party's claim, nor is it required to speculate as to which portion of the record the party relies. *United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993). The Sixth Circuit has held that, even where evidence exists somewhere in the record, it is the duty of the nonmoving party to bring that evidence to the Court's attention. *Parsons v. FedEx Corp.*, 360 F. App'x 642, 646 (6th Cir. 2010).

Because Halpin offers no evidence on which he relies

---

obviously be entitled to that defense given the absence of any constitutional violation.

for his conclusory statement that Dr. Waldridge and Nurse Dawes were deliberately indifferent, his argument fails as a matter of law. Thus, Dr. Waldridge and Nurse Dawes are entitled to summary judgment.

Halpin has also adduced no admissible evidence of a clear and persistent pattern of deliberate indifference to inmate medical needs. This Court has already held in another case that the same affidavits submitted by plaintiff here regarding allegedly poor care at the CCDC by SHP are: (1) inadmissible for a variety of reasons, and (2) even if admissible, inadequate as a matter of law to support a municipal liability claim against Campbell County or SHP. *Fryman v. Campbell County*, Covington Civil Action No. 09-114-WOB-JGW, Docs. 25, 30.

With no underlying constitutional violation, Halpin can state no "municipal liability" claim as to SHP. *See Blackmore v. Kalamazoo* County, 390 F.3d 890, 900 (6th Cir. 2004) ("A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers.") (citation omitted).

Finally, the report of Halpin's expert witness, Dr. Joseph Paris, raises no triable issue. (Doc. 105 Ex. 1). According to Dr. Paris, Halpin's "lapses in care" conform to a "pattern of deliberate indifference." (Doc. 101 Ex.

7). This, however, is an improper conclusion of law that goes to the ultimate issue and is not admissible at trial. *Cutlip v. City of Toledo*, 488 F. App'x 107, 119-21 (6th Cir. 2012). As such, it raises no genuine issue of material fact.

Finally, Dr. Paris's report is silent as to the subjective perception of these defendants, and the record thus remains devoid of evidence that would satisfy this element.

All defendants are thus entitled to summary judgment on Halpin's § 1983 claim. Given this disposition, the Court will decline to exercise its supplemental jurisdiction over Halpin's state law claims. *See* 28 U.S.C. § 1367(c).[6]

Therefore, having reviewed this matter, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** (1) that the motion of the Campbell County defendants for summary judgment as to plaintiff, Steven Halpin (Doc. 77) be, and is hereby, **GRANTED AS TO PLAINTIFF'S FEDERAL CLAIM;** (2) the motion of Southern

---

[6] The Court notes that Halpin concedes the state law claims against Campbell County should be dismissed, as well as the outrage and loss of consortium claims against Buckler and Fickenscher. (Doc. 105 p. 1). Halpin also concedes the state regulatory, loss of consortium and outrage claims against the SHP defendants should be dismissed. (Doc. 106 p. 1).

18

Health Partners for partial summary judgment as to plaintiff, Steven Halpin (Doc. 78) be, and is hereby, **GRANTED AS TO PLAINTIFF'S FEDERAL CLAIM**; and (3) Plaintiff Steven Halpin's state law claims be, and are hereby, **DISMISSED WITHOUT PREJUDICE**.

This 26th day of September, 2013.



Signed By:
*William O. Bertelsman* WOB
United States District Judge