UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT COVINGTON


CIVIL ACTION NO. 2010-183 (WOB-JGW)


WILLIAM J. BRAMBLE, JR.,
ET AL.                                        PLAINTIFFS


VS.                    <u>MEMORANDUM OPINION AND ORDER</u>


CAMPBELL COUNTY, KENTUCKY,
ET AL.                                        DEFENDANTS
_____

This is an action by former detainees at the Campbell County Detention Center (CCDC) against the jail, and against Southern Health Partners (SHP), alleging cruel and unusual punishment in violation of the 5th, 8th and 14th Amendments and plaintiffs' civil rights under 42 U.S.C. § 1983. Plaintiffs also allege state law claims.

This matter is before the Court on the motion of the Campbell County defendants for summary judgment as to plaintiff, Kenneth Stinson (Doc. 83), and the motion for partial summary judgment of Southern Health Partners, as to plaintiff, Kenneth Stinson (Doc. 84).

Having reviewed the parties' briefs, the Court concludes that oral argument is unnecessary to the

resolution of these motions.   The Court therefore issues the following Memorandum Opinion and Order.

*FACTS*

A.   <u>Facts Common to All Claims</u>

Since February 1, 2007, the CCDC has had a contract with SHP pursuant to which SHP provides "all professional medical, mental health, dental and related health care and administrative services" for CCDC inmates, including sick call, nursing care, regular and emergency physician care. (Holt, Doc. 132 Ex. 1).[1]   SHP, in turn, contracts with a physician and employs nurses to staff the CCDC.   These arrangements were in place at all times relevant to this action.

Plaintiffs filed this case on August 27, 2010, as a proposed class action.   (Doc. 1).   On September 24, 2010, plaintiffs filed a Second Amended Class Action Complaint, which is the operative complaint herein.   (Doc. 5). Plaintiffs allege that they were denied medical attention for their serious medical needs in violation of their 5th, 8th and 14th Amendment rights.   (Doc. 5 ¶ 16, ¶¶ 366-69). Plaintiffs also allege Kentucky statutory claims (Id. at ¶¶

---

[1] This case has been consolidated with *Holt v. Campbell County*, Covington Civil Action No. 09-82 and references to the Holt record are cited as "Holt,_____."

370-71), negligent or intentional infliction of emotional distress (Id. at ¶¶ 372-73), negligence (Id. at ¶¶ 374-75), loss of consortium (Id. at ¶¶ 376-77), and wrongful death (Id. at ¶¶ 378-79).

On March 25, 2011, the parties stipulated to dismissal of plaintiffs' class action allegations. (Doc. 28). Discovery ensued and, after numerous extensions, the pending motions for summary judgment were filed and briefed.

**B.   Plaintiff Kenneth Stinson**

Kenneth Stinson ("Stinson") was incarcerated at the CCDC from May 13, 2010 to June 25, 2010. (Doc. 83 Ex. 2, 3).

**1. Medical Issues: Anxiety Medication, Acyclovir, Eye Infection.**

When Stinson was admitted to the CCDC, he indicated he was under medical treatment for anxiety, and that he previously or currently had drug dependency problems and psychiatric care. (Doc. 84 Ex. 6). Stinson also indicated that he had no serious medical condition, no serious mental health condition, and no current prescriptions for emotional problems. (Doc. 84 Ex. 7). In addition, Stinson was advised that he could seek medical care. (Id.) Stinson testified that these answers were incorrect. (Doc.

3

127-2 p. 51-54).

On May 20, Stinson requested his prescription medications, Valium and Tramadol, and requested to see a "psyche [sic] doc." (Doc. 84 Ex. 9). On May 27, Stinson was given a mental health survey indicating he was diagnosed with bi-polar disorder and he needed help with his mental illness. (Doc. 84 Ex. 10). Medical also requested his medical records to verify his prescription medications the same day. (Doc. 84 Ex. 11). Stinson followed up with sick call slips relating to his anxiety medications on May 29, June 9, and June 12. (Doc. 84 Ex. 12, 13). On June 17, the SHP staff sent another request to Walgreens for Stinson's prescriptions, which was responded to the same day. (Doc. 84 Ex. 14). After verification of his medications, Stinson was prescribed Buspar on June 17 and received it until his release on June 25. (Doc. 84 Ex. 8; Doc. 83 Ex. 11).

On June 21, Stinson filed a grievance with Fickenscher, after receiving Buspar, complaining that he had yet to receive any anxiety medication. (Doc 83 Ex. 20). Stinson was not notified that he was placed on Buspar, a replacement anxiety medication. (Doc. 127-2 p. 89-90). Fickenscher responded to Stinson's June 21 grievance on June 24, stating his complaint was passed to

4

medical and medical responded that Stinson had been started on anxiety medication.  (Doc. 83 Ex. 21).

On May 28, a family member brought in Stinson's Acyclovir medication, and the jail physician approved it the same day.  (Doc. 83 Ex. 5, 11).  Stinson continued to receive this medication until his release on June 25.  (Doc. 83 Ex. 11).  On June 4, Stinson filed a grievance with Fickenscher complaining that he was not getting the proper dosage of Acyclovir.  (Doc. 83 Ex. 22).  Fickenscher responded the same day, stating that he forwarded his complaint to medical and medical informed him that Stinson was brought to medical on sick call and the issue was resolved.  (Doc. 83 Ex. 23).  Stinson testified that he never told anyone in sick call the issue was resolved.  (Doc. 127-2 p. 60-61).  Stinson also never filed an appeal.

Stinson submitted a sick call slip on May 29 and on June 5 complaining about his dosage of Acyclovir.  (Doc. 84 Ex. 12, 13).  However, his sick call slip on June 9 does not mention any problems with his Acyclovir.  (Doc. 84 Ex. 13).  A Patient Clinic Data Form on June 7 indicates Stinson was seen by medical and he stated his "mouth is better" and "he didn't need Acycolvir [sic]."  (Doc. 83 Ex. 25).

Stinson also complains of an eye infection that was

5

improperly treated.  (Doc. 127-2 p. 92).  On June 5, Stinson filed a sick call slip complaining about an eye infection.  (Doc. 83 Ex. 24).  On June 7, the medical staff saw Stinson and gave him eye drops.  (Doc. 83 Ex. 26).  On June 13, 16, and 17 Stinson filed additional sick call slips stating the drops were ineffective.  (Doc. 83 Ex. 16, 27, 28).  On June 20, the medical staff saw Stinson again, and gave him new eye drops.  (Doc. 83 Ex. 29).  Stinson testified the infection cleared up without any additional treatment after he was released.  (Doc. 127-2 p. 92-93).

**2. Assaults**

Stinson testified that he was assaulted on two separate occasions, both within the first month of his incarceration.  (Doc. 127-2 p. 7-8).  The first incident occurred when Springer, another inmate, took Stinson's phone card, and a shoving match ensued.  (Doc. 127-2 p. 8).  Stinson alleges he reported the theft of his phone card but not the physical altercation to jail staff and the jail staff did nothing in response.  (Doc. 127-2 p. 9-10).

The second incident occurred within a week of the first.  (Doc. 127-2 p. 10).  Springer, unprovoked, attacked Stinson, hitting Stinson in the face, knocking him to the ground, smashing his head into the ground, and Springer rubbed his crotch in Stinson's face.  (Doc. 127-2 p. 11).

6

Stinson admitted he never told any of the jail staff he was concerned about Springer attacking him before the assault. (Doc. 127-2 p. 12).  Stinson testified that he made a report about the incident.  (Doc. 127-2 p. 14).

On May 23, medical treated Stinson, noting he had swelling and bruising above both eyes, knots on his head, and that his left shoulder was swollen.  (Doc. 83 Ex. 5). Stinson was held in medical observation overnight, and was released after he refused an x-ray, requested to go back to general population and a doctor medically cleared him. (Doc. 83 Ex. 5, 6).  Stinson does not remember refusing an x-ray or signing the treatment refusal form, although he admits it is his signature on the form.  (Doc. 127-2 p. 15-17).

After both assaults, Stinson alleges Springer tampered with his food to continue to harass him.  (Doc. 127-2 p. 25-27).  However, Stinson never complained about this behavior to any CCDC staff because he feared retaliation from Springer and other inmates.  (Doc. 127-2 p. 27-29).

**3. Expert Reports**

Stinson offers Dr. Joseph Paris as an expert witness. Dr. Paris opines that:

> Stinson did not have access to a Psychiatrist.
> The issuing of psychotropics like Buspar and
> Desyrel without charted Physician visits, target

7

symptoms and goals of therapy is below the
standard of care.  These lapses reach the level
of deliberate indifference resulting in
approximately 43 days of untreated or only
partially treated mental health conditions, with
concomitant pain and suffering.

(Doc. 85 Ex. 3).

The SHP defendant's offer Dr. Grady Bazzel as an expert witness.  Dr. Bazzel stated "I see no elements of malpractice or deliberate indifference."  (Doc. 58 Ex. A p. 14).  Dr. Bazzel notes that after Stinson's altercation he was placed in a safe environment, under medical observation, and was returned to general population when requested.  (Id.)  Stinson was allowed to take his Acyclovir from his home supply, that his eye infection was properly treated with antibiotic drops with nursing follow-ups, and that there was no follow up complaints of physical or sexual abuse.  (Doc. 58 Ex. A p. 15).  However, Dr. Bazzel fails to comment on Stinson's anxiety disorder and its treatment by the medical staff.

### *Analysis*

#### A.   <u>Legal Standards</u>

Section 1983 prohibits any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State" from depriving any U.S. citizen "of any rights, privileges, or immunities secured by the constitution and

8

laws." Plaintiff argues that his Fourteenth Amendment right to adequate medical care was violated, which is analogous to prisoners' Eighth Amendment rights to be free from cruel and unusual punishment. "The Eighth Amendment does not apply to pretrial detainees. Under the Fourteenth Amendment Due Process Clause, however, pretrial detainees have a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners." *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001).

"As applied to prisoners, this constitutional guarantee encompasses a right to medical care for serious medical needs." *Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)). However, because the Eighth Amendment prohibits mistreatment only if it is tantamount to "punishment," courts have imposed liability upon prison officials only where they are "so deliberately indifferent to the serious medical needs of prisoners as to unnecessarily and wantonly inflict pain." *Perez*, 466 F.3d at 423 (internal quotations and citation omitted).

"Negligence or medical malpractice alone cannot sustain an Eighth Amendment claim, absent a showing of deliberate indifference." *Id.* (citing *Estelle*, 429 U.S. at

9

105-06).

"Deliberate indifference" has both an objective and a subjective component. *Id.* (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)).  With respect to medical needs, the need "must be objectively, 'sufficiently serious.'"  *Id.* at 423-24 (quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)).

"In considering the subjective component, this circuit has emphasized that a plaintiff must produce evidence showing that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk."  *Id.* at 424 (internal quotations and citation omitted).  "[A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer v. Brennan*, 511 U.S. 825, 838 (1994).  *See also id.* at 842 (official must act or fail to act "despite his knowledge of a substantial risk of serious harm").

The subjective component "prevents medical-malpractice claims from being transformed into constitutional claims." *Quigley v. Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (citation omitted).

10

B.   **Qualified Immunity**

Assuming a plaintiff raises a triable issue as to
whether a constitutional violation occurred, a public
official sued in his or her individual capacity may still
be shielded from suit under the doctrine of qualified
immunity.  All defendants here assert this defense.

"The doctrine of qualified immunity protects
government officials 'from liability for civil damages
insofar as their conduct does not violate clearly
established statutory or constitutional rights of which a
reasonable person would have known.'" *Pearson v. Callahan*,
129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*,
457 U.S. 800, 818 (1982)).  "The protection of qualified
immunity applies regardless of whether the government
official's error is 'a mistake of law, a mistake of fact,
or a mistake based on mixed questions of law and fact.'"
*Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004)
(Kennedy, J., dissenting)).

C.   **Application to Stinson's Claims**

1.   **Objectively Serious Medical Need**

Stinson originally alleged two constitutional
violations: (1) CCDC's failure to protect Stinson from
unnecessary risks to his health and safety from other
inmates and (2) failure to provide constitutionally

11

adequate medical care.  However, Plaintiff concedes in his response in opposition to summary judgment that any claim relating to the physical assaults should be dismissed. (Doc. 109 p. 1).

The parties also dispute whether Stinson meets the objective and subjective component of his denial of medical care claim.  However, because Stinson fails to establish the subjective component, the Court will assume he meets the objective component.

## 2.   Deliberate Indifference: Subjective Component

Even though Stinson's medical condition is assumed to be a serious medical need, there is no evidence from which a reasonable jury could conclude that any of the defendants were deliberately indifferent to his medical needs.

### a.   CCDC Defendants

Plaintiff argues that defendants Buckler and Fickenscher were aware of facts from which they could, and did, draw an inference that a substantial risk of serious harm existed as to Stinson's health.  This argument fails as a matter of law because there is no such evidence in the record.

There is no evidence that Buckler had any contact with Stinson during his incarceration, was aware of his medical

condition, or was aware of any of his symptoms.  Stinson never filed a grievance with Buckler and there is no other evidence showing that Buckler knew of Stinson's medical need.  Further, Stinson never identifies any point when Buckler had knowledge of specific facts of his medical situation.

Further, to overcome summary judgment, the opposing party must present some affirmative evidence showing there is a genuine issue of material fact and cannot simply rest on its allegations.  *Hunley v. DuPont Auto.*, 341 F.3d 491, 496 (6th Cir. 2003).  The trial court has no obligation to "wade through" the record in search of specific facts to support the party's claim, nor is it required to speculate as to which portion of the record the party relies.  *United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993). The Sixth Circuit has held that, even where evidence exists somewhere in the record, it is the duty of the nonmoving party to bring that evidence to the Court's attention. *Parsons v. FedEx Corp.*, 360 F. App'x 642, 646 (6th Cir. 2010).  Because the Plaintiff offers no evidence on which he relies for his conclusory statement that Buckler and Fickenscher were deliberately indifferent, his argument fails as a matter of law, and Buckler and Fickenscher are entitled to summary judgment.

13

While Stinson fails to point to his grievances as
alerting Fickenscher to facts from which he could draw an
inference of substantial risk to Stinson's safety, the
grievances could have given Fickenscher the information
from which to draw such an inference.  However, the
grievances and their responses show Fickenscher did not act
with deliberate indifference but instead acted reasonably.
(Doc. 83 Ex. 20-23).

Stinson's first grievance, on June 4, complained about
getting an improper dosage of Acyclovir and an eye
infection.  (Doc. 83 Ex. 22). Fickenscher responded the
same day stating that he contacted medical, and medical
advised him the issue was resolved.  (Doc. 83 Ex. 23).

Stinson submitted another grievance on June 21
complaining about his lack of anxiety medication, not
receiving his Acyclovir three times per day, and
complaining about his eye infection.  (Doc. 83 Ex. 20).
Fickenscher responded the same day stating that he had
notified medical and that they had already started Stinson
on medication for anxiety treatment.  (Doc. 83 Ex. 21).
Even if these grievances put Fickenscher on notice of a
serious risk to Stinson's health, his response was
reasonable.  *Farmer v. Brennan*, 511 U.S. 825, 844-45
(stating that prison officials who acted reasonably, even

14

when they had knowledge of a substantial risk to an inmate, are not deliberately indifferent should the harm still result.)

Because there is no evidence that Buckler knew anything about Stinson's health, he could not have been deliberately indifferent, and because Fickenscher acted reasonably, the subjective element fails as a matter of law. Because *respondeat superior* is not available as a basis for liability under § 1983, Buckler and Fickenscher are entitled to summary judgment.

With no underlying constitutional violation, Stinson can state no "municipal liability" claim as to Campbell County. *See Blackmore v. Kalamazoo* County, 390 F.3d 890, 900 (6th Cir. 2004) ("A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers.") (citation omitted).

For these reasons, all the CCDC defendants are entitled to summary judgment.[2]

### b.    SHP Defendants

Stinson's argument showing deliberate indifference of Nurse Dawes and Dr. Waldridge states no facts from which to

---

[2] The Court thus need not reach the issue of qualified immunity, although the individual defendants would obviously be entitled to that defense given the absence of any constitutional violation.

find they were deliberately indifferent.  Instead, Stinson simply asserts they meet the subjective standard, then lays out the subjective legal standard, but he fails to point to any evidence that shows Nurse Dawes or Dr. Waldridge had information that would allow them to make an inference that there was a serious risk of harm and that they made such an inference.  (Doc. 110 p. 6).

Further, Dr. Waldridge's contract with SHP ended in December 2009, while Stinson's incarceration did not begin until May 2010.  (Doc. 72 Ex. 4 p. 12).  Thus, Dr. Waldridge could not have been deliberately indifferent because he no longer worked at or for SHP.

Additionally, under the above authority, the opposing party must present some affirmative evidence showing there is a genuine issue of material fact and cannot simply rest on its allegations.  *Hunley* 341 F.3d at 496.  Because Plaintiff offers no evidence on which he relies for his conclusory statement that Nurse Dawes and Dr. Waldridge were deliberately indifferent, his argument fails as a matter of law, and both defendants are entitled to summary judgment.

Stinson also has adduced no admissible evidence of a clear and persistent pattern of deliberate indifference to inmate medical needs.  This Court has already held in

16

another case that the same affidavits submitted by plaintiff here regarding allegedly poor care at the CCDC are: (1) inadmissible for a variety of reasons, and (2) even if admissible, inadequate as a matter of law to support a municipal liability claim against Campbell County or SHP. *Fryman v. Campbell County*, Covington Civil Action No. 09-114-WOB-JGW, Docs. 25, 30.

With no underlying constitutional violation, Stinson can state no "municipal liability" claim as to SHP. *See Blackmore v. Kalamazoo* County, 390 F.3d 890, 900 (6th Cir. 2004) ("A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers.") (citation omitted).

Finally, the report of Stinson's expert witness, Dr. Joseph Paris, raises no triable issue. (Doc. 85 Ex. 3). According to Dr. Paris, issuing psychotropic medication without charted physician visits, target symptoms, and goals of therapy is below the standard of care and reaches deliberate indifference. (Id.) This, however, is an improper conclusion of law that goes to the ultimate issue and is not admissible at trial. *Cutlip v. City of Toledo*, 488 F. App'x 107, 119-21 (6th Cir. 2012). As such, it raises no genuine issue of material fact.

Additionally, Dr. Paris's report is silent as to the

subjective perception of these defendants, and the record thus remains devoid of evidence that would satisfy this element.

All defendants are thus entitled to summary judgment on Stinson's § 1983 claim.  Given this disposition, the Court will decline to exercise its supplemental jurisdiction over Stinson's state law claims.  *See* 28 U.S.C. § 1367(c).[3]

Therefore, having reviewed this matter, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** (1) that the motion of the Campbell County defendants for summary judgment as to plaintiff, Kenneth Stinson (Doc. 83) be, and is hereby, **GRANTED AS TO PLAINTIFF'S FEDERAL CLAIM;** (2) the motion of Southern Health Partners for partial summary judgment as to plaintiff, Kenneth Stinson (Doc. 84) be, and is hereby, **GRANTED AS TO PLAINTIFF'S FEDERAL CLAIM;** and (3) Plaintiff Kenneth Stinson's state law claims be, and are hereby, **DISMISSED WITHOUT PREJUDICE.**

---

[3] The Court notes that Stinson concedes his state law claims against Campbell County should be dismissed, as well as the outrage claim against Buckler and Fickenscher.  (Doc. 109 p. 1).  Plaintiff also concedes that the state regulatory claim, loss of consortium claim and the outrage claim against SHP should all be dismissed.  (Doc. 110 p. 1).

This 26th day of September, 2013.



Signed By:

*William O. Bertelsman*   WOB

**United States District Judge**