**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**NORTHERN DIVISION**
**AT COVINGTON**


**CIVIL ACTION NO. 2010-183 (WOB-JGW)**

**WILLIAM J. BRAMBLE, JR.,**
**ET AL.**                                    **PLAINTIFFS**

**VS.**              <u>**MEMORANDUM OPINION AND ORDER**</u>

**CAMPBELL COUNTY, KENTUCKY,**
**ET AL.**                                    **DEFENDANTS**
_____

        This is an action by former detainees at the Campbell
County Detention Center (CCDC) against the jail, and
against Southern Health Partners (SHP), alleging cruel and
unusual punishment in violation of the 5th, 8th, and 14th
Amendments and plaintiffs' civil rights under 42 U.S.C. §
1983.  Plaintiffs also allege state law claims.

        This matter is before the Court on the motion of the
Campbell County defendants for summary judgment as to
plaintiff, Bryan Huffman (Doc. 79), and the motion for
partial summary judgment of Southern Health Partners, as to
plaintiff, Bryan Huffman (Doc. 80).

        Having reviewed the parties' briefs, the Court
concludes that oral argument is unnecessary to the
resolution of these motions.  The Court therefore issues
the following Memorandum Opinion and Order.

*FACTS*

A.   **Facts Common to All Claims**

Since February 1, 2007, the CCDC has had a contract with SHP pursuant to which SHP provides "all professional medical, mental health, dental and related health care and administrative services" for CCDC inmates, including sick call, nursing care, regular and emergency physician care. (Holt, Doc. 132 Ex. 1).[1] SHP, in turn, contracts with a physician and employs nurses to staff the CCDC.  These arrangements were in place at all times relevant to this action.

Plaintiffs filed this case on August 27, 2010, as a proposed class action.  (Doc. 1).  On September 24, 2010, plaintiffs filed a Second Amended Class Action Complaint, which is the operative complaint herein.  (Doc. 5). Plaintiffs allege that they were denied medical attention for their serious medical needs in violation of their 5th, 8th and 14th Amendment rights.  (Doc. 5 ¶ 16, ¶¶ 366-69). Plaintiffs also allege Kentucky statutory claims (Id. at ¶¶ 370-71), negligent or intentional infliction of emotional distress (Id. at ¶¶ 372-73), negligence (Id. at ¶¶ 374-75), loss of consortium (Id. at ¶¶ 376-77), and wrongful death

---

[1] This case is related to *Holt v. Campbell County*, Covington Civil Action No. 09-82 and references to the Holt record are cited as "Holt,_____."

2

(Id. at ¶¶ 378-79).

On March 25, 2011, the parties stipulated to dismissal of plaintiffs' class action allegations. (Doc. 28). Discovery ensued and, after numerous extensions, the pending motions for summary judgment were filed and briefed.

### B.   __Plaintiff Bryan Huffman__

Bryan Huffman ("Huffman") was incarcerated at the CCDC from April 25, 2010 to January 10, 2011. (Doc. 79 Ex. 3; Doc. 80 Ex. 3 p. 17).  This lawsuit was filed August 27, 2010 and the amended complaint was filed September 24, 2010.  (Doc. 1, Doc. 5).

When Huffman was admitted to the CCDC he indicated he was being treated for a collapsed lung and diabetes.  (Doc. 79 Ex. 6, 7).  In addition, Huffman was advised that the Rules and Regulations of the CCDC were displayed on channels 1 and 6 of CCDC's Television Broadcast System. (Doc. 79 Ex. 5).  On April 25, 2010, the SHP staff saw Huffman and completed a Medical Staff Receiving Form, again noting the collapsed lung and diabetes.  (Doc. 79 Ex. 8). However, Huffman's only complaint in this lawsuit relates to a hand injury.  (Doc. 80 Ex. 3. p. 93, 97; Doc. 5 ¶¶ 312-23).

In May or June 2010, Huffman was moved into Cell 109,

3

which had a sharp metal anchor protruding from the wall where a table used to be attached.  (Doc. 80 Ex. 3 p. 94). Huffman was assigned to the top bunk, even though during a previous incarceration he had been "bottom bunk" restricted.  (Id. at p. 93-94).  Huffman alleges he spoke to at least three people about his top bunk situation. (Doc. 135-1 p. 108-09).  Huffman never submitted a grievance to notify jail administrators about the danger of the sharp metal wall anchor or his top bunk situation. (Doc 135-1 p. 104-05, 109-10).

On June 12, 2010, Huffman was climbing off his bunk, his "leg gave out," and his hand hit the sharp metal anchor.  (Doc. 80 Ex. 3 p. 94).  As a result, Huffman's hand was severely injured, suffering major tendon damage. (Doc. 135-1 p. 113-15, 124).  Huffman was transported to the emergency room at St. Elizabeth Hospital where he was diagnosed with a laceration, prescribed an antibiotic and discharged with orders to follow up with a specialist. (Doc 79 Ex. 10).  Huffman was returned to the CCDC and placed on medical watch.  (Doc. 80 Ex. 4).

Huffman alleges he was to be taken for a follow-up appointment on June 14, 2010, but the Emergency Room discharge instructions informed Huffman to seek a specialist.  (Id.)  Further, Huffman alleges he was

4

prescribed Percocet after his injury on June 12 and denied it until after the June 23 surgery, and that the SHP staff failed to properly monitor his bandages during this time. (Doc. 135-1 p 129-32, 135-36).

On June 15, 2010, SHP contacted Dr. Baker, a specialist, and set up an appointment on June 21, 2010. (Doc. 80 Ex. 4). On June 21, Dr. Baker determined Huffman needed surgery and scheduled it for June 23, 2010. (Doc. 80 Ex. 7). On June 23, Dr. Baker performed surgery on Huffman and released him back to the CCDC. (Id.)

After Huffman's surgery on June 23, he was given Percocet three times daily as well as an antibiotic. (Doc. 80 Ex. 8). On June 26, the jail physician increased his Percocet to four times daily. (Id.)

On June 29, 2010, Huffman removed his cast against Dr. Baker's instructions and the SHP medical staff rewrapped his hand. (Doc. 80 Ex. 4). On July 2, 2010, Huffman went to Dr. Baker for a post-operative examination and Dr. Baker recommended hand therapy. (Doc. 80 Ex. 9). Dr. Baker recommended a walk-in appointment, that day, to begin hand therapy, but the guards stated it was not possible. (Id.)

On July 12, 2010, Huffman wrote a grievance directed to Defendant Fickenscher about a deputy's decision to place Huffman in disciplinary segregation. (Doc. 79 Ex. 15).

5

Defendant Fickenscher's received stamp was used on the grievance indicating he received it, but Capt. Talbot actually responded to it. (Doc. 79 Ex. 16). Capt. Talbot denied Huffman's grievance on July 13, 2010 because Huffman had been in multiple arguments with, and made threats against, CCDC and SHP staff in the days prior. (Doc. 79 Ex. 16).

Huffman's main complaint in the grievance was about the disciplinary action taken against him. (Doc. 79 Ex. 15). But Huffman also alleged in his grievance that he was denied medication from July 8-12, which was the cause of his bad behavior. (Id.) However, the CCDC records show he was offered his medication but he refused to take it because it caused him an upset stomach. (Doc. 79 Ex. 17). Huffman was offered Zantac along with his Ibuprofen to address his stomach pain, but he still refused. (Doc 80, Ex. 10). Huffman's grievance also states he was given pain medication on July 12, the date of the grievance. (Doc. 79 Ex. 15). Huffman never appealed Capt. Talbot's denial of his grievance. (Doc. 79 Ex 4).

Huffman went to hand therapy on July 12 and 14, and saw Dr. Baker again on July 19, 2010. (Doc. 80 Ex. 12). In addition, Dr. Baker notes that Huffman told him he had been keeping his hand elevated at night, with extra

6

blankets, as requested by Dr. Baker.  (Id.)

On July 20, 2010, the SHP medical staff responded to Huffman's cell because he complained he fell.  (Doc. 79 Ex. 9).  SHP ordered x-rays which came back as normal and Huffman was moved to a bottom bunk at this time.  (Id.; Doc. 80 Ex. 13).  Huffman also signed a Patient Consent form, which Nurse Betty Dawes signed as a witness.  (Doc. 80 Ex. 13).

On August 27, 2010, Huffman again met with Dr. Baker for a post-operative examination, and Dr. Baker noted that Huffman had missed more than half of his hand therapy appointments.  (Doc. 80 Ex. 14).  One of the guards told Dr. Baker that Huffman missed his hand therapy appointments because he threatened the guards, saying that he has family on the outside willing to help with escape.  (Id.)  The guard requested a more "randomized" hand therapy schedule for everyone's safety.  (Id.)  Huffman states the appointments were missed because there were not enough guards to transport him.  (Doc. 135-1 p. 159).  Further, there was at least one occasion where Huffman refused to go to hand therapy because he was sick.  (Doc. 80 Ex. 3 p. 160-62).

Huffman was released from CCDC custody on January 10, 2011, eventually ending up at the Kentucky State

Reformatory, where he underwent another hand surgery and additional physical therapy, which has failed to yield positive results.  (Doc. 80 Ex. 3 p. 17, 163-65; Doc. 135-1 p. 173, 175).

Huffman offers Dr. Joseph Paris as an expert witness. Dr. Paris details the pain medication schedule for Huffman, noting that he received only eighteen of sixty Percocet tablets and twenty-two of forty-five Norco tablets.  (Doc. 94 Ex. 1).  Dr. Paris opines:

> Insufficient pain relief, well below levels recommended by Huffman's Surgeon, rises to the level of deliberate indifference.  The fact that over 50% Physical Therapy appointments were missed due to Correctional Officer shortages also conforms to a pattern of denial of medically necessary care, reflecting deliberate indifference.

(Doc. 94 Ex. 1).

SHP offers Dr. Grady Bazzel as an expert witness. Dr. Bazzel stated: "I see no elements of malpractice or deliberate indifference."  (Doc. 58 Ex. A p. 10). Dr. Bazzel notes that care for Huffman was immediate and on-going.  (Id.) Huffman was rushed to the ER and there was no significant delay in follow-up with a surgeon specialist.  (Id.)  Further, Dr. Baker noted that there was "significant post-op non-compliance" on the part of Huffman.  (Id. at p. 11).

8

## *Analysis*

### A.   <u>Legal Standards</u>

Section 1983 prohibits any "person who, under color of any statute, ordinance, regulation, custom, or usage, of any State" from depriving any U.S. citizen "of any rights, privileges, or immunities secured by the constitution and laws."  Plaintiff argues that his Fourteenth Amendment right to adequate medical care was violated, which is analogous to prisoners' Eighth Amendment rights to be free from cruel and unusual punishment.  "The Eighth Amendment does not apply to pretrial detainees. Under the Fourteenth Amendment Due Process Clause, however, pretrial detainees have a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners." *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001).

"As applied to prisoners, this constitutional guarantee encompasses a right to medical care for serious medical needs." *Perez v. Oakland County*, 466 F.3d 416, 423 (6th Cir. 2006) (citing *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976)).  However, because the Eighth Amendment prohibits mistreatment only if it is tantamount to "punishment," courts have imposed liability upon prison officials only where they are "so deliberately indifferent

9

to the serious medical needs of prisoners as to
unnecessarily and wantonly inflict pain." *Perez*, 466 F.3d
at 423 (internal quotations and citation omitted).

"Negligence or medical malpractice alone cannot
sustain an Eighth Amendment claim, absent a showing of
deliberate indifference." *Id.* (citing *Estelle*, 429 U.S. at
105-06).

"Deliberate indifference" has both an objective and a
subjective component. *Id.* (citing *Comstock v. McCrary*, 273
F.3d 693, 702 (6th Cir. 2001)). With respect to medical
needs, the need "must be objectively, 'sufficiently
serious.'" *Id.* at 423-24 (quoting *Farmer v. Brennan*, 511
U.S. 825, 834 (1994)).

"In considering the subjective component, this circuit
has emphasized that a plaintiff must produce evidence
showing that the official being sued subjectively perceived
facts from which to infer substantial risk to the prisoner,
that he did in fact draw the inference, and that he then
disregarded that risk." *Id.* at 424 (internal quotations
and citation omitted). "[A]n official's failure to
alleviate a significant risk that he should have perceived
but did not, while no cause for commendation, cannot under
our cases be condemned as the infliction of punishment."
*Farmer v. Brennan*, 511 U.S. 825, 838 (1994). *See also id.*

10

at 842 (official must act or fail to act "despite his knowledge of a substantial risk of serious harm").

The subjective component "prevents medical-malpractice claims from being transformed into constitutional claims." *Quigley v. Thai*, 707 F.3d 675, 681 (6th Cir. 2013) (citation omitted).

### B.   Qualified Immunity

Assuming a plaintiff raises a triable issue as to whether a constitutional violation occurred, a public official sued in his or her individual capacity may still be shielded from suit under the doctrine of qualified immunity.  All defendants here assert this defense.

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  "The protection of qualified immunity applies regardless of whether the government official's error is 'a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact.'" *Id.* (quoting *Groh v. Ramirez*, 540 U.S. 551, 567 (2004) (Kennedy, J., dissenting)).

11

C. **Prison Litigation Reform Act**

The PLRA provides: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a).  Under this provision, "a prisoner must exhaust all of his available remedies before filing a § 1983 action in federal court." *Brock v. Kenton County, Ky.*, 93 Fed. App'x 793, 796 (6th Cir. 2004) (citation omitted).  "That is, under the PLRA, exhaustion of available administrative remedies is a mandatory pre-condition to filing suit in federal court." *Id.* at 798 (citation omitted).

"The Sixth Circuit requires some affirmative efforts to comply with the administrative procedures before analyzing whether the facility rendered these remedies unavailable." *Napier v. Laurel Jackson, Ky.*, 636 F.3d 218, 224 (6th Cir. 2011) (citation omitted). *See also Brock*, 93 F. App'x at 798 (noting that the prisoner "must make some affirmative efforts to comply with the administrative procedure" and that the procedures are "unavailable" only where, despite the prisoner's efforts, the facility thwarts the inmate's attempts at exhaustion).

12

**D.**   **Application to Huffman's Claims**

      **1.**   **Prison Litigation Reform Act Exhaustion**

The Prison Litigation Reform Act ("PLRA") bars Huffman's claim because he failed to exhaust his administrative remedies and was still a prisoner when the lawsuit was filed.

Huffman was incarcerated when he filed this lawsuit and thus is a prisoner for PLRA exhaustion purposes. *Cox v. Mayer*, 332 F.3d 422, 424-25 (6th Cir. 2003). Further, his claims allege he received inadequate medical care while incarcerated at the CCDC, which clearly pertain to "conditions of confinement."

Thus, the PLRA exhaustion requirement applies to Huffman, and all the defendants have pled this affirmative defense. (Doc. 17 at p. 33; Doc. 18 at p. 2). Further, CCDC defendants have attached to their motion for summary judgment evidence of the CCDC's grievance process, the means through which inmates are informed of it, and that Huffman was in fact informed of it. (Doc. 79 Ex. 4, 5). Once defendants put forward this evidence, plaintiffs are "required to present 'significant probative evidence' to defeat the motion for summary judgment on this ground." *Napier*, 636 F.3d at 225 (citation omitted).

Huffman argues that the PLRA exhaustion requirement is

13

not applicable to him because it was a sham process. (Doc. 93 p. 4). It was a sham because, as Buckler noted in his affidavit, a grievance should be made out to "the Jailer." But Huffman's grievance was made out to "Lt. Col. Fickenscher," in violation of the grievance process. So, Huffman argues, his grievance should have been rejected for being addressed to the wrong person, but instead, the CCDC accepted and responded to his grievance in violation of their own procedures. (Doc. 93 p. 4).

Failure to reject all improperly addressed grievances does not make the process a sham. As Buckler stated in his affidavit, it was CCDC policy that Buckler, his Chief Deputy Jailer, or an authorized designee would investigate and respond to grievances. (Doc. 79 Ex. 4 ¶ 10). Here, Capt. Talbot, presumably an authorized designee, responded. Huffman had the opportunity, under CCDC policy, to appeal this grievance denial, but he failed to do so.

Huffman also argues that only the disciplinary portion of his grievance was denied and not the portion that related his to medical treatment. (Doc. 93 p. 4). However, it is clear, from the face of the grievance, that the medical issue was being used as an excuse for the behavior that caused Huffman to be disciplined and was not part of the grievance itself. (Doc. 79 Ex. 15). In fact,

Huffman states, in the grievance, that he received his medication the day the grievance was filed. (Doc. 79 Ex. 15 p. 5). The only other complaint in the grievance was the lack of water and the cleanliness of Huffman's cell, which was also addressed in Captain Talbot's response. (Doc. 79 Ex. 16). Jail administrators are not required to respond to grievances that are not made.

Thus, Huffman's argument that the administrative remedies were not available to him because they were a sham fails. Further, he did not file a grievance relating to any medical complaint, and therefore, did not exhaust his administrative remedies as required by the PLRA.

Additionally, Huffman's § 1983 claims are barred by the applicable one-year statute of limitations even if refiled after exhaustion. *Holt v. Campbell Cnty., Ky.*, CIV.A. 2009-082 WOB, 2012 WL 2069653, at *2 (E.D. Ky. June 8, 2012); *Burke v. Campbell Cnty. Fiscal Court*, No. Civ.A. 06-CV-191-DLB, 2006 WL 3627711, at *3 (E.D. Ky. Dec. 11, 2006).[2]

### 2. Objectively Serious Medical Need

Huffman's hand injury was an objectively serious medical need and is not contested.

---

[2] SHP incorporates CCDC's PLRA argument and it applies with equal force to SHP. (Doc. 80 p. 1).

15

### 3.    Deliberate Indifference: Subjective

**Component**

Even though Huffman's medical condition was a serious medical need, there is no evidence from which a reasonable jury could conclude that any of the defendants were deliberately indifferent to his medical needs.

### a.    CCDC Defendants

Plaintiff argues that defendants Buckler and Fickenscher were aware of facts from which they could, and did, draw an inference that a substantial risk of serious harm existed as to Huffman's health.  This argument fails as a matter of law because there is no such evidence in the record.

There is no evidence that Buckler had any contact with Huffman during his incarceration, was aware of his medical condition, or was aware of any of his symptoms.  There is also no evidence that he was involved in any of the medical decisions involving Huffman, and Plaintiff says as much. ("Further, while Defendant Buckler had almost no contact with the general population, much less with Mr. Huffman specifically . . . ." Doc. 93 p. 7, Plaintiff's Response in Opposition to CCDC's Motion for Summary Judgment).

Huffman filed a grievance to Fickenscher, which was stamped with Fickenscher's "received" stamp, but Capt.

Talbot responded to the grievance. (Doc. 79 Ex. 15, 16). Assuming Fickenscher read the grievance, it still would not have conveyed facts from which to draw an inference that a serious risk of harm existed as to Huffman. In Huffman's grievance he states: "And yes I got my medicine today July 12, 2010 for the pain . . . ." (Doc. 79 Ex. 15 p. 5). Thus, the grievance could not give rise to facts alerting Fickenscher to Huffman's lack of medical care when Huffman admits he was receiving medical care in his grievance.

Because there is no evidence that Buckler or Fickenscher knew anything about Huffman's health, they could not have been deliberately indifferent and the subjective element fails as a matter of law. Because *respondeat superior* is not available as a basis for liability under § 1983, Buckler and Fickenscher are entitled to summary judgment.[3]

With no underlying constitutional violation, Huffman can state no "municipal liability" claim as to Campbell County. *See Blackmore v. Kalamazoo* County, 390 F.3d 890, 900 (6th Cir. 2004) ("A municipality or county cannot be

---

[3] Huffman argues that Buckler and Fickenscher were aware of general problems with the medical contractor at the CCDC. That, however, provides no basis for the claim against them in their individual capacities where it is undisputed that they played no role in Huffman's care.

liable under § 1983 absent an underlying constitutional violation by its officers.") (citation omitted).

For these reasons, all the CCDC defendants are entitled to summary judgment.[4]

### b.   SHP Defendants

With respect to the SHP defendants, the Court first notes that Huffman has abandoned his individual § 1983 claim against Dr. Waldridge. (Doc. 94 p. 1). Plaintiff asserts his claim against Nurse Dawes is still viable, so only the claim against her is addressed here. (Id.)

Plaintiff's argument that Nurse Dawes was deliberately indifferent lacks evidentiary support. Instead, Plaintiff simply asserts Nurse Dawes meets the subjective standard, then lays out the subjective legal standard, with no supporting facts. (Doc. 94 p. 5). The only fact provided is that Nurse Dawes began overseeing the CCDC facility in August 2009. (Id.)

However, to overcome summary judgment, the opposing party must present some affirmative evidence showing there is a genuine issue of material fact and cannot simply rest on its allegations. *Hunley v. DuPont Auto.*, 341 F.3d 491,

---

[4] The Court thus need not reach the issue of qualified immunity, although the individual defendants would obviously be entitled to that defense given the absence of any constitutional violation.

18

496 (6th Cir. 2003).  Further, the trial court has no obligation to "wade through" the record in search of specific facts to support the party's claim, nor is it required to speculate as to which portion of the record the party relies.  *United States v. WRW Corp.*, 986 F.2d 138, 143 (6th Cir. 1993).  The Sixth Circuit has held that, even where evidence exists somewhere in the record, it is the duty of the nonmoving party to bring that evidence to the Court's attention.  *Parsons v. FedEx Corp.*, 360 F. App'x 642, 646 (6th Cir. 2010).[5]

The only evidence cited is the fact that Nurse Dawes oversaw the CCDC beginning in August 2009.  Nurse Dawes also signed Huffman's "Patient Consent for Treatment" form as a witness, which Huffman does not mention.  (Doc. 80 Ex. 13).  However, these facts alone are not enough to meet the subjective standard.

Because Plaintiff offers no other evidence on which it relies for its conclusory statement that Nurse Dawes was deliberately indifferent, his argument fails as a matter of law, and Nurse Dawes is entitled to summary judgment.

Huffman also has adduced no admissible evidence of a

---

[5] If a party knows of evidence that raises a genuine issue of material fact, it is their burden to place the evidence into the record and cite to it.  FED. R. CIV. P. 56(c).  The Court notes a lack of depositions in the record.

clear and persistent pattern of deliberate indifference to inmate medical needs.  This Court has already held in another case that the same affidavits submitted by plaintiff here regarding allegedly poor care at the CCDC are: (1) inadmissible for a variety of reasons, and (2) even if admissible, inadequate as a matter of law to support a municipal liability claim against Campbell County or SHP.  *Fryman v. Campbell County*, Covington Civil Action No. 09-114-WOB-JGW, Docs. 25, 30.

With no underlying constitutional violation, Huffman can state no "municipal liability" claim as to SHP.  *See Blackmore v. Kalamazoo* County, 390 F.3d 890, 900 (6th Cir. 2004) ("A municipality or county cannot be liable under § 1983 absent an underlying constitutional violation by its officers.") (citation omitted).

Finally, the report of Huffman's expert witness, Dr. Joseph Paris, raises no triable issue.  (Doc. 94 Ex. 1). According to Dr. Paris, Huffman's insufficient pain relief and missed hand therapy appoints, due to alleged correction officer shortages, rises to the level of deliberate indifference.  (Doc. 94 Ex. 1).  This, however, is an improper conclusion of law that goes to the ultimate issue and is not admissible at trial.  *Cutlip v. City of Toledo*, 488 F. App'x 107, 119-21 (6th Cir. 2012).  As such, it

20

raises no genuine issue of material fact.

Finally, Dr. Paris's report is silent as to the subjective perception of these defendants, and the record thus remains devoid of evidence that would satisfy this element.

All defendants are thus entitled to summary judgment on Huffman's § 1983 claim.  Given this disposition, the Court will decline to exercise its supplemental jurisdiction over Huffman's state law claims.  *See* 28 U.S.C. § 1367(c).[6]

Therefore, having reviewed this matter, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** (1) that the motion of the Campbell County defendants for summary judgment as to plaintiff, Bryan Huffman (Doc. 79) be, and is hereby, **GRANTED AS TO PLAINTIFF'S FEDERAL CLAIM;** (2) the motion of Southern Health Partners for partial summary judgment as to plaintiff, Bryan Huffman (Doc. 80) be, and is hereby, **GRANTED AS TO PLAINTIFF'S FEDERAL CLAIM;** and (3) Plaintiff Bryan Huffman's state law claims be, and are hereby,

---

[6] The Court notes that Huffman concedes his state law claims against Campbell County should be dismissed, as well as the outrage claim against Buckler and Fickenscher.  (Doc. 93 p. 1).  The Plaintiff also concedes that the state regulatory claim and the outrage claim should be dismissed.  (Doc. 94 p. 1).

**DISMISSED WITHOUT PREJUDICE.**


This 27th day of September, 2013.



Signed By:

*William O. Bertelsman*

**United States District Judge**